UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC OVERLANDER, LLC,<br>　　　　Plaintiff,<br>　　v.<br>KAUAI OVERLANDER,<br>　　　　Defendant. | Case No. 18-cv-02142-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 13 |

On April 10, 2018, Plaintiff Pacific Overlander, LLC filed the instant suit against Defendant Kauai Overlander, asserting trademark and copyright infringement. (Compl. ¶ 1, Dkt. No. 1.) On June 8, 2018, Defendant filed a motion to dismiss or transfer venue, asserting that the Court lacked personal jurisdiction over Defendant. (Def.'s Mot. to Dismiss at 2, Dkt. No. 13-1.)

The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). Having considered the parties' filings, the Court GRANTS Defendant's motion to dismiss.

## I. BACKGROUND

Plaintiff operates an adventure vehicle rental business, renting out SUVs and pickup trucks equipped with tents and other camping equipment. (Compl. ¶ 7.) Plaintiff has offices in San Francisco and Las Vegas. (Bryce Johnson Decl. ¶¶ 4, 9, Dkt. No. 13-2.) Plaintiff owns a trademark for the combined word and design mark "PACIFIC OVERLANDER EXPEDITION VEHICLES," and has a pending trademark registration for the standard character mark "PACIFIC OVERLANDER." (Compl. ¶ 9.) Plaintiff also has a pending copyright registration for its website, titled "Pacific Overlander." (Compl. ¶ 10.)

Defendant also operates an adventure travel business, which it advertises through its

website www.kauaioverlander.com and on various social media platforms. (Compl. ¶ 11.) Defendant has one office located on the island of Kauai, and has no offices or presence on any other Hawaiian island or in the mainland United States. (Johnson Decl. ¶ 3.) Defendant has three vehicles that it rents out for camping and travel on Kauai. (Johnson Decl. ¶ 4.) Defendant advertises with Hawaiian businesses, and has no business sponsors or partners in the mainland United States. (Johnson Decl. ¶ 6.)

## II. LEGAL STANDARD

### A. Request for Judicial Notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B. Motion to Dismiss Pursuant to Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. The plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Where, as here, a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). To make a prima facie showing, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [the plaintiff's] favor." *Love*, 611 F.3d at 608.

### C. Motion to Dismiss for Forum Non Conveniens or Transfer Venue

Generally, "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). The party moving to dismiss based on

forum non conveniens has the burden of showing that there is an adequate alternative forum and that the balance of private and public interest factors favors dismissal. *Id.* at 1142-43. "A plaintiff's choice of forum will not be disturbed unless the private and public interest factors strongly favor trial in the foreign [forum]." *Dardengo v. Honeywell Int'l, Inc. (In re Air Crash Over the Midatlantic*), 792 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011).

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law. The Court must also give some weight to the plaintiffs' choice of forum.

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 581 n.6 (2013) (internal quotations and citations omitted). Thus:

> The standard to be applied is whether, in light of these factors, defendants have made a clear showing of facts which either (1) establish such oppression and vexation of a defendant as to be out of proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

*Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983) (internal quotations omitted).

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." As with a motion to dismiss for forum non conveniens, a district court considering a § 1404(a) motion to transfer in the absence of a forum-selection clause "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co.*, 134 S. Ct. at 581. Thus, the district court must "weigh the relevant factors and decide whether, on balance, a transfer would serve the convenience of the parties and witnesses and otherwise promote the interest of justice." *Id.* (internal quotations omitted).

3

### III. DISCUSSION

#### A. Request for Judicial Notice

Plaintiff requests that the Court take judicial notice of: (A) Defendant's website at www.kauaioverlander.com, (B) print-outs from Defendant's Instagram account, and (C) print-outs of Google reviews for Defendant. (Norton Decl., Dkt. No. 27-1; *see also* Request for Judicial Notice ("RJN"), Dkt. No. 27-2.) Defendant did not oppose.

Courts in this district have found that in general, websites and their contents may be judicially noticed. *See Caldwell v. Caldwell*, No. 05-cv-4166-PJH, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006) ("as a general matter, websites and their contents may be proper subjects for judicial notice"); 712 F. Supp. 2d 974, 983 (N.D. Cal. 2010). Again, Defendants did not object to Plaintiff's request for judicial notice. The Court therefore takes judicial notice of the Defendant's website, the print-outs of the Instagram account, and the print-outs of the Google reviews, but not for the truth of the contents therein.

#### B. Motion to Dismiss Pursuant to Rule 12(b)(2)

##### i. General Jurisdiction

General jurisdiction over a nonresident defendant exists when the defendant engages in "continuous and systematic general business contacts" that "approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801 (internal quotations omitted). Plaintiff suggests that the Court has general jurisdiction over Defendant solely because "Defendant operates an active website, which allows persons from anywhere in the world to book Defendant's services." (Plf.'s Opp'n at 3.) In support, Plaintiff relies on *Gator.com Corp. v. LL Bean, Inc.*, 341 F.3d 1072 (9th Cir. 2003). The Court rejects this argument.

First, *Gator.com Corp.* was vacated, and is therefore not good law. *Gator.com Corp. v. L.L. Bean, Inc.*, 366 F.3d 789, 789 (9th Cir. 2004) ("The three-judge panel opinion shall not be cited as precedent by or to this court or any district court of the Ninth Circuit, except to the extent adopted by the en banc court"); *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1132 (9th Cir. 2005) (en banc decision dismissing appeal for lack of a live controversy in light of parties' settlement agreement).

Second, even if *Gator.com Corp.* was good law, its facts are readily distinguishable from the instant case. In *Gator.com Corp.*, the Ninth Circuit found that there was general jurisdiction where the defendant not only made sales to California through its website, but targeted electronic and paper advertising at California, shipped millions of dollars-worth of product to California, maintained substantial numbers of on-line accounts for California consumers, and maintained frequent and ongoing relationships with numerous California vendors from whom the defendant bought product. 341 F.3d at 1074-75, 1078-79. In contrast, here Defendant operated a website that was available in California, but provided services only in Hawaii. Plaintiff presents no evidence that Defendant targeted advertising at California, the number of California customers,[1] the volume of services provided to California customers, or that Defendant had any ongoing relationships with California businesses. Plaintiff's attempt to rely solely on the availability of Defendant's website in California falls well-short of the stringent requirements of general jurisdiction. *Compare with Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1225-26 (9th Cir. 2011) (finding no general jurisdiction where the defendant operated a highly interactive website, allowed third parties to sell tickets to California events on its website, employed a California firm to design its website, and had business relationships with California businesses).

### ii. Specific Jurisdiction

California's long-arm statute authorizes specific personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution. To satisfy due process, a defendant must have sufficient "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Court may assert specific personal jurisdiction over nonresident defendants if three requirements are met:

---

[1] At best, Plaintiff identifies one customer who *may* be from California, based on that customer leaving a review for a California business. (Plf.'s Opp'n at 2.) Even assuming this customer was from California, the Ninth Circuit has "held that 'occasional' sales to forum residents by a nonresident defendant do not suffice to establish general jurisdiction." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1226 (9th Cir. 2011).

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

With respect to the first factor, the court engages in a "purposeful direction" analysis for infringement claims. *Mavrix*, 647 F.3d at 1228 ("Because Mavrix has alleged copyright infringement, a tort-like cause of action, purposeful direction is the proper analytical framework"). Purposeful direction inquires into "whether a defendant purposefully directs his activities at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* (internal quotation omitted). The "effects test" requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation omitted).

The Court finds that Plaintiff has not established the second prong of the purposeful direction test. In establishing the "express aiming" prong, the Ninth Circuit has "warned courts not to focus too narrowly on the third prong--the effects prong--holding that 'something more' is needed in addition to a mere foreseeable effect." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). Specific to websites, the Ninth Circuit analyzes the contacts of a website using the *Zippo* sliding scale, first established in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *Mavrix Photo*, 647 F.3d at 1226. On one end of the scale are "active sites," where the "defendant clearly does business over the Internet and enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, which support jurisdiction." *Id.* On the other end are "passive sites," where the "defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions, and which do not support jurisdiction." *Id.* at

1226-27 (internal quotations omitted).

In *Pebble Beach Co.*, the Ninth Circuit found the defendant had not expressly aimed his actions at California where the plaintiff brought an infringement case against a defendant who used "Pebble Beach" in his domain name. 453 F.3d at 1153-54, 1156. The website provided information on lodging rates and food options, and also allowed visitors to fill out an on-line inquiry form, but did not have a reservation system. *Id.* at 1153-54. Additionally, the defendant knew of the Pebble Beach golf club in California. *Id.* at 1156. The Ninth Circuit found that in general, the operation of this "passive website" was insufficient to constitute express aiming. *Id.* at 1158. Instead, the operation of the passive website had to be coupled with "something more," or conduct directly targeting the forum. That "something more" was not satisfied by the defendant's knowledge of Pebble Beach in California; such knowledge went to the foreseeable effects prong, and was not an independent act that could be interpreted as being expressly aimed at California. *Id.*

In contrast, in *Mavrix Photo*, the Ninth Circuit concluded that there was express aiming at California where the defendant operated an "active website" that included the ability to post comments, vote in polls, join a membership club, and submit news tips and photos. 647 F.3d at 1222. The Ninth Circuit found "most salient the fact that [the defendant] used [the plaintiff's] copyrighted photos as part of its exploitation of the California market for its own commercial gain." *Id.* at 1229. In finding that the defendant had "continuously and deliberately exploited" the California market, the Ninth Circuit pointed to the fact that the defendant made money by selling advertising space to third-party advertisers, and that advertising revenue was affected by the number of hits to the website. *Id.* at 1230. A substantial number of those hits were from California residents. Moreover, some of the third-party advertisers directed their advertisements to Californians; by hosting third-party advertisers that targeted California residents, the defendant knew about its California user base, and that it exploited that base for commercial gain by selling advertising space. *Id.* Additionally, the defendant's website had "a specific focus on the California-centered celebrity and entertainment industries." *Id.* Considering this together, the Ninth Circuit concluded that "it does not violate due process to hold [the defendant] answerable in

7

a California court for the contents of a website whose economic value turns, in significant measure, on its appeal to Californians." *Id.* Thus, where the "website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state." *Id.* at 1231.

Finally, in *Bell v. Imperial Palace Hotel/Casino Inc.*, the district court found that a website which allows for reservations to be made fall in the middle of the *Zippo* sliding scale, explaining:

> In internet cases involving the sale of goods the entire transaction (order, payment, and confirmation) can be completed online. The resident can bring about the transmission of the goods into the forum state through the order alone. Hotels, on the other hand, are somewhat unique in the internet context. Neither party anticipates that goods, services, or information of intrinsic value will be transmitted or provided in the forum state as a result of the internet exchange of information. To the contrary, both parties recognize that the internet exchange is simply preliminary to the individual traveling outside the forum state to use the service. In this respect, the exchange of information over the internet is not unlike a toll-free reservations hotline. The purpose of the internet interaction is not achieved until the resident customer leaves the forum state and arrives at the hotel destination.

200 F. Supp. 2d 1082, 1087-88 (E.D. Mo. 2001); *see also Snowney v. Harrah's Entm't*, 35 Cal. 4th 1054, 1063 ("Defendant's Web site, which . . . permits visitors to make reservations at their hotels, is interactive and, at a minimum, falls within the middle ground of the *Zippo* sliding scale"). The district court found that there was "no evidence offered to suggest that [the defendant] has directly advertised or solicited business in Missouri," and that the operation of a website that allowed visitors to make reservations was alone insufficient for personal jurisdiction. 200 F. Supp. 2d at 1088.

Here, the Court finds that Plaintiff has failed to establish the "something more" required for express aiming. Defendant operates a site that falls in the middle of the *Zippo* sliding scale, allowing for reservations to be made for a service that is provided solely in Hawaii. Beyond that, however, Plaintiff provides no evidence that Defendant has done "something more" to direct its actions at California in order to appeal to or profit from California specifically. For example, there is no evidence Defendant advertised in California; instead, Defendant states that its only advertised partners are Hawaiian businesses. (Johnson Dec. ¶ 6.) There is no evidence Defendant

8

had any specific contacts with California at all. Indeed, Plaintiff's opposition points to no California-specific contacts at all beyond the vague possibility that Defendant might have had one California customer, based on that customer having left a review for both Defendant and a San Francisco business. (Plf.'s Opp'n at 2.) The fact that Defendant might have had a California customer or that Defendant's website is available in California is, alone, insufficient. Without some showing that Defendant specifically targeted California, this case is comparable to the facts of *Pebble Beach* and *Bell*, which found that the operation of a universally accessible website was insufficient for personal jurisdiction. Accordingly, the Court concludes that there is no personal jurisdiction over Defendant.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss for lack of jurisdiction. Because it does not appear that amendment is futile, however, the dismissal is without prejudice; Plaintiff may file an amended complaint, if it can allege sufficient facts to show jurisdiction within **thirty days** of the date of this order.

IT IS SO ORDERED.

Dated: August 10, 2018

KANDIS A. WESTMORE
United States Magistrate Judge